UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATON CENTER, INC., a California corporation,<br><br>                                  Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, a corporation; and DOES 1 through 10, inclusive,<br><br>                                  Defendants. | Case No.:  3:20-cv-00496-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

The matters pending before the Court are the Motion to Dismiss filed by Defendant Blue Cross and Blue Shield of South Carolina (ECF No. 7) and the Joint Motion to Consolidate Cases filed by Plaintiff Aton Center, Inc. and Defendant Blue Cross and Blue Shield of South Carolina (ECF No. 8).

## I.   PROCEDURAL BACKGROUND

On December 27, 2019, Plaintiff Aton Center, Inc. commenced this action by filing a Complaint in the Superior Court of California for the County of San Diego, assigned case number 37-2019-00068852-CU-BC-NC, against Defendant Blue Cross and Blue Shield of South Carolina.  *See* ECF No. 1-4 at 2.  Plaintiff alleges that Defendant "breached [its]

agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment, leaving an unpaid balance of $113,680.76 owing from Defendant[] to Plaintiff which has caused Plaintiff substantial hardship." *Id*. at 4.   Plaintiff brings the following eight causes of action: (1) breach of contract (oral agreement); (2) breach of contract (implied contract); (3) promissory estoppel; (4) quantum meruit; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) intentional concealment; and (8) violation of Business & Professions Code § 17200. *See id*. at 4-11.  Plaintiff seeks "general, special, restitutionary and/or compensatory damages"; prejudgment interest; expenses, attorney's fees, "and other costs"; "an injunction prohibiting the conduct alleged herein and/or the appointment of a receiver over Defendant[]"; and "other and further relief as the Court may deem just and proper." *Id*. at 11.

On March 16, 2020, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1446. *See* ECF No. 1 at 1.

On April 17, 2020, Defendant filed a Motion to Dismiss of Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 7).[1]  On April 22, 2020, the parties filed a Joint Motion to Consolidate Cases.  (ECF No. 8).   On May 11, 2020, Plaintiff filed a Response in opposition.  (ECF No. 9).[2]  On May 18, 2020, Defendant filed a Reply.  (ECF No. 11).

---

[1] Defendant requests the Court to take judicial notice of Exhibit 1 (ECF No. 7-3) and Exhibit 2 (ECF No. 7-4) to Defendant's Motion to Dismiss.  *See* ECF No. 7-2.  The Court has not considered these exhibits in resolving this Order.

[2] Plaintiff requests the Court to take judicial notice of Exhibit A (ECF No. 9-1) to Plaintiff's Response in opposition.  *See* ECF No. 9-1.  The Court has not considered this exhibit in resolving this Order.

## II.   ALLEGATIONS OF THE COMPLAINT

"Plaintiff is a corporation authorized to do and doing business in the City of Encinitas, County of San Diego, State of California … as an inpatient residential substance abuse treatment facility …." (ECF No. 1-4 at 2). Plaintiff "provided residential treatment care services which were or should have been covered by health insurance policies which … were provided, sponsored, supplied, underwritten, administered and/or implemented by Defendant[] …." *Id*. at 2-3. "Defendant … is a corporation authorized to do and doing substantial insurance and/or health plan/policy administration business in the city of Encinitas, county of San Diego, and state of California, within the jurisdiction of this court." *Id*. at 3.

While the subject plans/policies were in effect, patients who were insured under plans issued by Defendant[] sought treatment with Plaintiff. The patients/insureds whose claims are at issue in this litigation are not specifically identified herein for privacy/HIPAA reasons and the identifying information relating to the patients and claims will be provided upon request in a private/confidential manner to Defendant[]. Plaintiff took reasonable steps to verify available benefits, including contacting Defendant[], as directed by Defendant[], to verify insurance benefits, including calling Defendant[] at the phone number provided by the Defendant[], and was advised in these verification of benefit (["]VOB["]) calls that the policies provided for and Defendant[] would pay for inpatient treatment, based on the usual, customary and reasonable rate (["]UCR["]) and/or prior payment history. In reasonable reliance on these representations and information, and pursuant to the agreement of Defendant[] to pay based on the UCR, Plaintiff admitted and treated the patients and submitted claims for payment in accordance with these representations and agreements.

UCR is a certain and well-known term of art, and methodology for determining a payment rate, in the health care industry. Based on the representations that the payment would be based on the UCR, prior payment history, authorization and agreement of the Defendant[] alleged above, Plaintiff provided the agreed upon services and has performed all conditions, covenants and promises required to be performed in accordance with the agreements referred to herein above except, if applicable, those that have been excused, waived or are otherwise inapplicable.

Within the past two years, at Encinitas, California, the Defendant[] breached [its] agreements with Plaintiff and/or committed other wrongful acts

and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment, leaving an unpaid balance of $113,680.76 owing from Defendant[] to Plaintiff which has caused Plaintiff substantial hardship. Plaintiff is informed and believes and thereon alleges that at the time benefits were verified Defendant[] had information regarding the different/lower daily payment amounts but withheld that information from Plaintiff. As a result of the facts and conduct alleged herein, an unconscionable injury would result to Plaintiff if Defendant[] [is] not required to pay the represented/agreed to payment rate based on the UCR and payment history, and Defendant[] [is] equitably estopped from denying the agreement/obligation to pay that amount.

*Id*. at 3-4.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted …." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations …." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citation omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

## IV.   DISCUSSION

### a.  Breach of Contract (Oral Agreement) (claim 1) and Breach of Contract (Implied Contract) (claim 2)

Defendant contends that Plaintiff fails to allege sufficient facts to establish an oral agreement or implied contract between Plaintiff and Defendant.  Defendant contends that an oral agreement or implied contract was not formed during the VOB phone calls initiated by Plaintiff.  Defendant contends that Plaintiff fails to allege mutual assent or certain terms. Defendant contends that Plaintiff fails to allege that the parties reached an agreement on price because Plaintiff fails to allege a specific dollar amount that Defendant agreed to pay.

Plaintiff contends that its breach of contract claims are based on the VOB phone calls and Defendant's authorization for services.  Plaintiff asserts that Defendant stated that it would pay for Plaintiff's services based on the UCR and that Defendant authorized Plaintiff's services.  Plaintiff contends that VOB and authorization communications form the basis of contract agreements.  Plaintiff contends that the UCR is a certain and well-known term in the industry analogous to the concept of fair market value.  Plaintiff contends that Defendant agreed to a recognized method by which the dollar amount would be objectively determined when Defendant stated that it would pay the UCR.

"A contract is either express or implied."  Cal. Civ. Code § 1619.  "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (citation omitted).  "The elements of a breach of oral contract claim are the same as

those for a breach of written contract ….” *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) (citations omitted).  “The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff’s performance or excuse for nonperformance, (3) defendant’s breach, and (4) damage to plaintiff therefrom.” *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (internal quotation marks and citation omitted).

“It is essential to the existence of a contract that there should be: 1. [p]arties capable of contracting; 2. [t]heir consent; 3. [a] lawful object; and, 4. [a] sufficient cause or consideration.”  Cal. Civ. Code § 1550.  “The consent of the parties to a contract must be: 1. [f]ree; 2. [m]utual; and, 3. [c]ommunicated by each to the other.”  Cal. Civ. Code § 1565.  “Consent is not mutual, unless the parties all agree upon the same thing in the same sense.”  Cal. Civ. Code § 1580.  “The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.”  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (citation omitted).

VOB and authorization phone calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract.  *See e.g.*, *TML Recovery, LLC v. Humana Inc.*, No. SACV 18-00462 AG (JDEx), 2018 WL 8806104, at *3 (C.D. Cal. Nov. 26, 2018) (“Plaintiffs allege that they verified patients’ benefits and obtained authorization as necessary.  But ‘within the medical insurance industry, an insurer’s verification is not the same as a promise to pay.’”); *TML Recovery, LLC v. Humana Inc.*, No. SACV 18-00462 AG (JDEx), 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (“Plaintiffs allege that they verified the patients’ benefits and obtained authorization as necessary….  But ‘within the medical insurance industry, an insurer’s verification is not the same as a promise to pay.’”); *see also Regents of the Univ. of California v. Aetna US Health of California, Inc.*, No. SACV 10-1043 DOC (RNBx), 2011 WL 13227844, at *5 (C.D. Cal. Mar. 15, 2011) (VOB and authorization phone call alone found to be insufficient to create an oral or implied contract on motions for summary

judgment); *Stanford Hosp. & Clinics v. Multinational Underwriters, Inc.*, No. C-07-05497 JF (RS), 2008 WL 5221071, at *6 (N.D. Cal. Dec. 12, 2008) (same).

In *Pacific Bay*, the plaintiff "alleged that it 'contacted Blue Shield to obtain prior authorization, precertification and consent to render treatment and perform procedures upon' the subscriber." *Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017). The plaintiff alleged that it "was advised by representatives of Blue Shield that the [subscriber] was insured, covered, and eligible for coverage under the respective Plan or Policy for the services to be rendered by [the plaintiff], at facilities operated by [the plaintiff] and that [the plaintiff] would be paid for performance of the procedures, care, and/or treatment rendered by Blue Shield." *Id.* (first alteration in original). The plaintiff alleged "that it 'was led to believe that it would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges.'" *Id.* The Court of Appeal stated, in relevant part,

> These allegations lack the specific facts required for us to determine there was any meeting of the minds between the parties. At best, [the plaintiff]'s allegations show that Blue Shield admitted that the subscriber was covered under one of its health plans and that it would pay something for [the plaintiff]'s treatment of the subscriber. What type of treatment or the extent of treatment is not described. In addition, it does not appear the parties reached any sort of agreement as to the rate Blue Shield would pay [the plaintiff]. Indeed, [the plaintiff] alleged it was led to believe Blue Shield would pay "a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges." Blue Shield did pay a portion of the billed charges, but [the plaintiff] argues it was not enough. However, we cannot say Blue Shield's payments breached any implied contract because there is no indication in the FAC what exactly Blue Shield agreed to pay.

*Id.*

However, courts have found that factual allegations of coverage beyond VOB and authorization phone calls may be sufficient to allege the existence of an oral or implied contract. *See e.g., Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, No. SACV 19-00709 AG (ADSx), 2020 WL 2027955, at *3 (C.D. Cal. Jan. 6, 2020) ("Bristol's allegations

go beyond a simple pre-authorization or verification and the blanket guarantee that Cigna would cover the treatment.  For each patient, Bristol alleges what type of treatment was being sought and how long the course of treatment was expected to last, along with extensions of time and requests to follow up.  Bristol further alleges a specific billing rate pegged to a percentage of the usual, customary and reasonable rate, and alleges a different rate depending on whether or not the patient had met his or her out-of-pocket maximum.  In each of the follow-up calls, Sure Haven was ensured the payment would be made at the previously agreed upon rate.  These allegations are sufficient to plead a plausible claim under Rule 8(a)."); *Out of Network Substance Use Disorder Claims,* No. SACV 19-2075 JVS (DFMx), 2020 WL 2114934, at *8 (C.D. Cal. Feb. 21, 2020) ("Plaintiff alleges that '… in multiple communications following admissions and the submission of claims, Defendants … orally promised to pay Plaintiff for the treatment provided to Defendants' insureds on the same terms as provided for in the policies between Defendants and their insureds; specifically, payments to Plaintiff equal to approximately 70% of Plaintiff's fully-billed charges (based on 30% co-insurance payable by the patients)."…  And '[i]n communication with Plaintiff, including telephone calls requesting verification of benefits, Defendants … represented to Plaintiff that the services provided to Defendants' insureds would be reimbursed at the fully billed charges….  These allegations plausibly describe the services United promised to pay for."); *California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18-CV-2867 PSG (AFM), 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018) ("The facts alleged include specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's MOOP expense was met, and 100% of the UCR rate afterwards….  Plaintiff has sufficiently alleged that an oral contract was formed between the parties."); *Regents of University of California v. Principal Financial Group*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) ("First, … defendants in this case provided both verification of coverage and explicit authorization for the hospital stay.  Second, defendants

in this case provided the verification and authorization on at least six separate occasions, both orally and in writing.  Drawing inferences from the factual record most favorable to plaintiff, it would be reasonable to conclude based on the written authorizations that defendants intended to be bound, subject to the provisions of the policy.").

In this case, the Complaint alleges that Plaintiff "call[ed] Defendant[] at the phone number provided by the Defendant[], and was advised in these [VOB] calls that the policies provided for and Defendant[] would pay for inpatient treatment, based on the [UCR] and/or prior payment history."  (ECF No. 1-4 at 4).  The Complaint further alleges that "[b]ased on the representations that the payment would be based on the UCR, prior payment history, authorization and agreement of the Defendant[] alleged above, Plaintiff provided the agreed upon services …."  *Id.*  "These allegations lack the specific facts required for [the Court] to determine there was any meeting of the minds between the parties."  *Pac. Bay,* 12 Cal. App. 5th at 216.  The alleged VOB calls and the allegations regarding "the [UCR] and/or prior payment history" "lack the specific facts required for [the Court] to determine there was" an agreement between Plaintiff and Defendant to pay a specific amount.  ECF No. 1-4 at 4; *Pac. Bay,* 12 Cal. App. 5th at 216.  The Complaint fails to allege facts to infer mutual consent in which "the parties all agree[d] upon the same thing in the same sense."  Cal. Civ. Code § 1580.  The Court concludes that Plaintiff's breach of oral agreement and breach of implied contract claims against Defendant fail to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's first and second claims are dismissed without prejudice.

### b. Promissory Estoppel (claim 3)

Defendant contends that Plaintiff fails to allege that Defendant made any clear and unambiguous promise to Plaintiff that Defendant would pay a specific amount.  Defendant contends that Plaintiff's reliance on Defendant's representations is unreasonable because of the ambiguous nature of the alleged promise.  Plaintiff contends that its promissory estoppel claim is based on VOB and authorization phone calls with Defendant.  Plaintiff asserts that

it was advised that Defendant would pay based on the UCR. Plaintiff contends that Defendant should be estopped from paying anything other than the UCR.

"A cause of action for promissory estoppel is basically the same as contract actions, but only missing the consideration element." *Yari*, 161 Cal. App. 4th at 182 (internal quotation marks and citation omitted). "Promissory estoppel applies whenever a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance would result in an injustice if the promise were not enforced." *Advanced Choices, Inc. v. State Dep't of Health Servs.*, 182 Cal. App. 4th 1661, 1671-72 (2010) (internal quotation marks and citations omitted). "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Id*. at 1672 (alteration in original) (internal quotation marks and citation omitted).

In this case, the Complaint alleges the following pursuant to Plaintiff's promissory estoppel claim (claim 3):

> … Defendant[] knew that the patient's insurance policies did not provide the coverage payment amounts represented by Defendant[] to the public at large and specifically Plaintiff. Nevertheless, … Defendant[] knowingly and/or negligently represented to Plaintiff the coverage payment amounts … with the intention that Plaintiff would rely on the representations and knowing that Plaintiff had no knowledge of the falsity of the representations.
>
> Plaintiff relied upon Defendant['s] representations and admitted the Defendant['s] insureds for treatment based thereon. Had Plaintiff known of the falsity of the representations it would not have done so. Accordingly, Defendant[] [is] estopped from asserting any payment amount contrary to the representations made by Defendant[] and Plaintiff is entitled to damages in an amount according to proof together with interest at the legal rate, and any other appropriate relief.

(ECF No. 1-4 at 6).

Plaintiff's failure to allege sufficient facts to establish the treatment Defendant promised to pay for and the patients Defendant promised to pay for precludes Plaintiff's promissory estoppel claim.  *Compare TML Recovery*, 2018 WL 8806104, at *3 ("The previously discussed absence of specific facts about what Defendants promised and when and to whom is precludes its claims for breach of implied contract, promissory estoppel, and quantum meruit, as well.") *and TML Recovery*, 2019 WL 3208807, at *4 ("Plaintiffs' claims for breach of implied contract, breach of oral contract, promissory estoppel, and quantum meruit are based on promises Defendants allegedly made outside of their insurance contracts…. Thus, Plaintiffs haven't plausibly stated the Third through Sixth claims.") *with Bristol*, 2020 WL 2027955, at *4 ("As previously discussed, Bristol has alleged sufficient facts for a plausible oral or implied contract claim, and because its promissory estoppel claim is based on the same facts, it survives.") *and Out of Network*, 2020 WL 2114934, at *8 ("The Court finds that Plaintiff has adequately alleged a 'clear and unambiguous' promise.  The 'promises' upon which Plaintiff relies are not merely general representations of what the patients' policies would cover in verification calls … but additional assurances that United would pay.").  The Court concludes that Plaintiff's promissory estoppel claim against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's third claim is dismissed without prejudice.

### c.  Quantum Meruit (claim 4)

Defendant contends that Plaintiff fails to allege sufficient facts to establish that Defendant requested Plaintiff's services.  Defendant asserts that Plaintiff alleges that Plaintiff initiated contact with Defendant to verify coverage and seek authorization.  Defendant contends that Plaintiff fails to allege that Defendant made specific requests for Plaintiff's services that Plaintiff provided to third parties.  Defendant contends that Plaintiff fails to allege that Defendant benefited from Plaintiff's services.  Plaintiff contends that all of the elements of a quantum meruit cause of action are included and supported by factual allegations.

"Quantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Children's Hosp. Cent. California v. Blue Cross of California*, 226 Cal. App. 4th 1260, 1274 (2014) (internal quotation marks and citation omitted). "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted). "[I]n order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002) (emphasis in original).

In this case, the Complaint alleges the following pursuant to Plaintiff's quantum meruit claim (claim 4):

> … Defendant[] communicated to Plaintiff that the insureds/patients … were insured and that the claims would be covered based on the UCR rate and prior history of dealings. By virtue of these communications and the conduct of the Defendant[] … Plaintiff was induced to provide substance abuse treatment services.
>
> Plaintiff provided the substance abuse treatment services to the patients/insureds … in reasonable reliance upon the representations and conduct of the Defendant[]. Plaintiff providing the substance abuse treatment services in reliance on the representations, communications and/or agreements by Defendant[] was not gratuitous[.] [sic]
>
> The amounts that Plaintiff billed for the substance abuse treatment services was and is the reasonable value of those services. Nevertheless, Defendant[] ha[s] refused to pay the reasonable value of the services [it] represented would be paid, and instead have only paid a small fraction of the reasonable value of the services. Under the circumstances, Defendant[] cannot conscientiously refuse to pay the balance due for the patients/insureds … and Defendant[] should be required to pay the remainder of the reasonable value of the substance abuse treatment services provided by Plaintiff to the insureds of Defendant[].

(ECF No. 1-4 at 6-7).

A single verification phone call made by a plaintiff fails to establish an implied request for services by a defendant. *See e.g., Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, No. 2:15–CV–08411–RGK–PLA, 2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) ("It is undisputed that Defendant did not request that Plaintiff provide [the patient] with medical services…. Rather, [the patient] requested medical services from Plaintiff, who then contacted Defendant to verify [the patient]'s coverage eligibility…. The undisputed facts thus show that Plaintiff cannot establish the third element of its quantum meruit claim."); *Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp. 3d 1042, 1052 (N.D. Cal. 2015) ("In the health insurance context, it is the patient who first requests service in the form of treatment. Then, the provider—in this case CHOMP—must seek authorization to provide such treatment from the insurer—in this case Aetna. No reasonable jury could conclude that CHOMP 'performed services at [Aetna's] request,' when in fact CHOMP initiated contact with Aetna as to authorization.").

The Complaint fails to allege sufficient facts to establish that Plaintiff "was acting pursuant to either an *express or implied request* for … services from [ ] [D]efendant ...." *Day*, 98 Cal. App. 4th at 248 (emphasis in original); *compare California Spine*, 2018 WL 6074567, at *2 ("Plaintiff alleges only a single verification call…. Courts have rejected the argument that a single verification telephone call made by a plaintiff represents an implied request for services by a defendant…. Because the facts as alleged do not establish that Defendant made an express or implied request for Plaintiff's services, Plaintiff cannot establish the first element of its quantum meruit claim.") *with Out of Network*, 2020 WL 2114934, at *9 ("Plaintiff alleges that United 'by words and conduct, requested that Plaintiff provide medically necessary treatment to their insureds, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.'… And '[a]s part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, knew

that Plaintiff was providing services to Defendants' insureds and promised to pay Plaintiff for the treatment and thereafter enjoyed the benefit of Plaintiff providing the services Defendants were obligated to ensure for their insureds.'… The Court finds that the allegations plausibly give rise to an inference that United requested Plaintiff treat its insureds.").

In addition, the Complaint fails to allege sufficient facts to establish "that the services rendered were *intended to and did benefit* [ ] [D]efendant." *Day*, 98 Cal. App. 4th at 248 (emphasis in original); *see e.g., IV Sols., Inc. v. United HealthCare Servs., Inc.*, No. CV 16-09598-MWF (AGRx), 2017 WL 3018079, at *11 (C.D. Cal. July 12, 2017) ("IV Solutions' quantum meruit claim must be dismissed for essentially the same reason as its claim for breach of contract under a third party beneficiary theory—it was United's members, not United itself, who benefitted from IV Solutions' services.").

The Court concludes that Plaintiff's quantum meruit claim against Defendant fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's fourth claim is dismissed without prejudice.

### d.  Violation of Business & Professions Code § 17200 (claim 8)

Defendant contends that Plaintiff fails to allege that the public is likely to be deceived. Defendant contends that Plaintiff fails to identify statements that were made to members of the general public. Defendant asserts that its alleged statements were made solely to Plaintiff. Defendant contends that Plaintiff fails to allege that Defendant and Plaintiff are competitors in the same type of business because Plaintiff is a substance abuse treatment center and Defendant insures or administers health benefit plans. Defendant contends that Plaintiff fails to allege that it is a consumer of Defendant's services because Plaintiff fails to allege that it is enrolled in a health plan insured or administered by Defendant. Defendant contends that Plaintiff fails to establish an unlawful act because California statutes do not apply to Defendant.

Plaintiff contends that Defendant violated California Health & Safety Code § 1371.8, California Insurance Code § 790.03, and California's mental health parity laws. Plaintiff

contends that Defendant engaged in a fraudulent business practice.  Plaintiff contends that Defendant engaged in deceptive business practices by inducing Plaintiff to provide treatment to Defendant's insureds.

California's Unfair Competition Law ("UCL") "prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1129-30 (9th Cir. 2014) (quoting Cal. Bus. & Prof. Code § 17200).  "In prohibiting 'any unlawful' business practice, the UCL 'borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable.'"  *Id*. (citations omitted).  "An unfair business practice is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks and citation omitted).  "To state a claim under either [the fraudulent or unfair] prong, a plaintiff's burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice."  *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (internal quotation marks and citation omitted).  "Actions for relief pursuant to [the UCL may] be prosecuted ... by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

In this case, the Complaint alleges the following pursuant to Plaintiff's violation of Business & Professions Code § 17200 claim (claim 8):

> … Defendant[] ha[s] engaged in a pattern of conduct including, … prior to treatment information non-network substance abuse treatment providers like Plaintiff that substance abuse treatment services will be paid based on the UCR and/or payment history, then authorizing providers to perform the services (like [it] did with Plaintiff …), but when claims are submitted Defendant[] pay[s] only a fraction of the UCR and provide[s] false and misleading information regarding the payment amounts for services. This continuing conduct is unlawful, unfair and/or fraudulent and constitutes an unfair business practice….
>
> The Defendant[']s [sic] conduct, including misrepresenting the amount it will pay for substance abuse treatment and then paying a substantially lower

unreasonable amount is unlawful and unfair, and constitutes fraud against Plaintiff since Plaintiff makes admission decisions based on information that is provided by and/or agreements entered into with Defendant[] when insurance benefits and payment amounts are verified and confirmed. Plaintiff … alleges that Defendant[']s [sic] conduct is in violation of California law, including but not limited to California Health and Safety code section 1371.8, Insurance Code section 790.03 and California's mental health parity laws.

(ECF No. 1-4 at 8-9, 10).

Plaintiff's UCL claim is "incidental to and depend[ent] upon the validity (or invalidity) of the preceding claims for relief." *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001), as modified (May 22, 2001). Plaintiff's UCL claim "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action." *Id*. Thus, Plaintiff's UCL claim fails to state a claim upon which relief can be granted. *See e.g., TML Recovery*, 2018 WL 8806104, at *3 ("And since Plaintiffs' Seventh Claim for violation of California's Unfair Competition Law is entirely derivative of the other claims that are insufficiently pled in the FAC, the Seventh Claim must be dismissed, too."); *TML Recovery*, 2019 WL 3208807, at *4 ("And since Plaintiffs' Seventh Claim for violation of California's Unfair Competition Law is conclusory and entirely derivative of the other claims that are insufficiently pled in the SAC, the Seventh Claim must be dismissed, too.").

In addition, Plaintiff's allegations regarding Defendant's violations of California Health & Safety Code § 1371.8, California Insurance Code § 790.03, and California's mental health parity laws are "merely conclusory" and not "required to [be] accept[ed] as true …." *Sprewell*, 266 F.3d at 988 (citation omitted); *see also Out of Network*, 2020 WL 2114934, at *10 ("The Court finds that Plaintiff sufficiently alleges that United is liable under the 'unlawful' prong of the UCL. The Complaint does not merely allege a 'laundry list' of statutes … but also specific conduct on United's part that plausibly constitutes violations of these statutes.").

The Court concludes that Plaintiff's claim for violation of Business & Professions Code § 17200 against Defendant fails to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's eighth claim is dismissed without prejudice.

### e. Intentional Misrepresentation (claim 5), Negligent Misrepresentation (claim 6), Intentional Concealment (claim 7)

Defendant contends that Plaintiff's fraud-based claims are barred by the economic loss rule.  Defendant contends that Plaintiff's intentional misrepresentation claim fails because Plaintiff fails to adequately allege intent.  Defendant contends that Plaintiff's negligent misrepresentation claim fails because Defendant's allegedly negligent false promise to pay money in the future is not an actionable misrepresentation.  Defendant contends that Plaintiff's fraudulent concealment claim fails because Plaintiff fails to allege facts establishing that Defendant had a duty to disclose the specific amounts of benefits it would pay for Plaintiff's services.  Defendant contends that Plaintiff's fraud-based claims fail because they are not alleged with particularity.

Plaintiff contends that the economic loss rule is inapplicable to claims for fraudulent inducement.  Plaintiff contends that Defendant fraudulently induced Plaintiff to treat its patients based on Defendant's representations that Plaintiff would be paid for its services, that the payment rate would be the UCR, and that the services were authorized.  Plaintiff contends that the economic loss rule is inapplicable at the pleading stage when alternative claims are alleged for breach of contract and fraud and when the existence of a contract is disputed.  Plaintiff contends that its fraud claims are properly pled.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against

the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citation omitted).

> Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged…. [A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (second alteration and emphasis in original) (internal quotation marks and citations omitted).

In this case, the Complaint alleges the following pursuant to Plaintiff's intentional misrepresentation claim (claim 5): "Within the past two years, Plaintiff and Defendant[] entered into negotiations for the treatment and services of Plaintiff's patients/Defendant['s] insureds …. In connection with these negotiations, said Defendant[] … with the intent to deceive and defraud Plaintiff, falsely and fraudulently made representations to Plaintiff …." (ECF No. 1-4 at 7). Pursuant to Plaintiff's negligent misrepresentation claim (claim 6), the Complaint alleges that "at the time of the representations made by Defendant[] … and thereafter, Defendant[] … concealed and suppressed from Plaintiff [its] lack of information and data and the consequent inability to accurately make the representations …." *Id*. at 8. Pursuant to Plaintiff's intentional concealment claim (claim 7), the Complaint alleges that "Defendant[] … actively concealed material facts regarding the coverages and/or rates that it would pay from Plaintiff …." *Id*. The Complaint fails to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Court concludes that Plaintiff's intentional misrepresentation, negligent misrepresentation, and intentional concealment claims fail to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's fifth, sixth, and seventh claims are dismissed without prejudice. [3]

---

[3] The Court does not rule on whether Plaintiff's claims against Defendant are barred by the economic loss rule or otherwise fail to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Blue Cross and Blue Shield of South Carolina (ECF No. 7) is GRANTED.  Plaintiff's Complaint is DISMISSED without prejudice.  Any motion for leave to file an amended pleading must be filed within 30 days of this Order.

IT IS FURTHER ORDERED that the Joint Motion to Consolidate Cases filed by Plaintiff Aton Center, Inc. and Defendant Blue Cross and Blue Shield of South Carolina (ECF No. 8) is DENIED.

Dated:  August 17, 2020

Hon. William Q. Hayes
United States District Court